UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

IRWIN J. BARKAN and          :
D&D BARKAN LLC               :
                             :
     v.                      :     C.A. No. 05-050L
                             :
DUNKIN' DONUTS, INC. and     :
BASKIN-ROBBINS USA, CO.      :

**MEMORANDUM AND ORDER**

This matter is before the Court on a Motion for a Protective Order filed by Defendants Dunkin' Donuts, Inc. and Baskin-Robbins USA, Co. ("Defendants") pursuant to Fed. R. Civ. P. 26(c). (Document No. 67). Plaintiffs Irwin J. Barkan and D&D Barkan LLC ("Plaintiffs") filed an Opposition. (Document No. 68). A hearing was held on April 23, 2008. For the reasons stated below, Defendants' Motion for a Protective Order is GRANTED.

**Background**

Discovery in this matter closes on April 30, 2008. On or about March 21, 2008, Plaintiffs served nine (9) document subpoenas on third parties pursuant to Fed. R. Civ. P. 45. All nine commanded production of responsive documents at the Boston Office of Plaintiffs' counsel on April 7, 2008. Three of the subpoenas were served on investment bankers (Bain Capital, The Carlyle Group and Thomas H. Lee Partners) who were apparently involved in a corporate acquisition of Defendants' corporate owner, Dunkin' Brands, Inc., after commencement of this lawsuit. Three were served on the Rhode Island Dunkin' Donuts franchisees (Guido Petrosinelli, David Baptista and James Lynch) who ultimately purchased the six Barkan stores which were the subject of a bankruptcy proceeding. One was served on a New York/Massachusetts Dunkin' Donuts franchisee

(Mark Cafua) who apparently made unsuccessful efforts to acquire the six Rhode Island stores. One was served on Citizens Bank and one on Defendants' counsel, Nixon Peabody LLP.

**Discussion**

**A.      Standing**

Plaintiffs contend that Defendants lack standing under Rule 26 to assert the rights of third parties. Rule 26(c) states that "[a] party or any person from whom discovery is sought may move for a protective order...to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense...."

Defendants make clear in their Memorandum (Document No. 67 at p. 3, n.1) that they are not representing the recipients of the subpoenas and do not "intend to assert their rights under Fed. R. Civ. P. 45 or otherwise." None of the third parties have moved for relief. However, counsel for five (Petrosinelli, Lynch and the investment bankers) have objected by way of letters to Plaintiffs' counsel and Defendants plainly have standing to object to the subpoena served on their attorney. Further, Defendants' counsel has apparently advised all of the subpoenaed individuals or entities of this pending Motion for a Protective Order.

Defendants identify two primary interests at stake in this Motion. First, Defendants contend that the subpoenas are overly broad and are not limited to the issues remaining in this lawsuit. Thus, they argue that they are incurring undue burden and expense by being "dragged into" this discovery. Second, Defendants posit that Plaintiffs' "strategy is to punish others for having even a tangential business relationship with Defendants."

Although a party cannot generally seek to enforce the rights of others under Rule 26(c), see 8 Charles Alan Wright, Arthur R. Miller & Richard L. Marcus, Federal Practice and Procedure: §

2035 (2d ed. 1994), Defendants have sufficiently identified their own interests in this matter to provide standing. In particular, as will be discussed below in more detail, the Court is troubled by Plaintiffs' apparent attempt to expand the scope of this litigation at the eleventh hour.

**B.     Scope**

There is a fundamental dispute between the parties as to the scope of this litigation. At its inception, this case included claims brought by several franchisee entities owned or controlled by Plaintiffs. These entities filed a bankruptcy petition in 2005 and ultimately released their claims against Defendants in connection with a sale of those stores. On January 31, 2006, Senior Judge Lagueux granted a Motion dismissing the claims of these entities with prejudice based on the bankruptcy sales and the releases.

Plaintiffs subsequently amended their Complaint. (Document No. 31). In the First Amended Complaint, Plaintiffs allege a breach and other "wrongful actions" related to a 2004 settlement agreement and that this resulted in the "improper termination" of certain store development agreements ("SDAs") and the loss of value of the SDAs in an amount of at least $3,000,000.00. (Document No. 31, ¶ 41).

On October 30, 2007, Judge Lagueux issued an Order resolving Defendants' Motion to Dismiss certain claims in the First Amended Complaint. (Document No. 48). Although he noted that the "heart" of Plaintiffs' claims related to the Settlement Agreement, Judge Lagueux concluded that "the dollar amount at which Plaintiffs value the SDAs appears to comprise their damages claims in its entirety." Id. at 3. He also determined that "Plaintiffs are not pressing the part of the claim that involves the bankrupt stores" and pointed out their assertion that "they are bringing no claims in connection with the demise of their franchisee entities." Id. at 11 and 14.

Judge Lagueux did not pull these conclusions out of thin air. He reasonably based them on what Plaintiffs alleged in their First Amended Complaint (Document No. 31) and stated in a Memorandum of Law. (Document No. 41). In their Memorandum, Plaintiffs responded to Defendants' standing argument by making clear that they "have asserted no claims on behalf of the franchisee entities or for damages as a result of the termination of the franchise agreements...[as] these matters were resolved through the Bankruptcy proceedings." Id. at 1, n.1 (emphasis added).

Contrary to the understanding reasonably gleaned by Judge Lagueux from Plaintiffs' pleadings, Plaintiffs now contend that their damages are "measured by the values of the Barkan business which was comprised of a network of Dunkin' pre and post bankruptcy stores and [SDAs]." (Document No. 68 at 3). At the hearing on this Motion, Plaintiffs' counsel stated that the "value of stores is significant" and that the "stores had a value that exceeded the amount that was recovered in bankruptcy." Plaintiffs' counsel characterized the Bankruptcy Court sale as only a "mitigation of damages" and made clear that Plaintiffs are seeking further damages as a result of the loss of such stores. It is troubling that these statements appear to contradict Plaintiffs' prior pleadings and Judge Lagueux's articulation of Plaintiffs' claim based on such pleadings.

There is no indication that Plaintiffs requested Judge Lagueux to reconsider the statements made in his Order or to clarify any perceived misunderstanding on his part. Further, Plaintiffs did not, at that time, seek to further amend their Complaint to correct any misperception. At the hearing on this Motion, Plaintiffs' counsel could not point to anything specific in the First Amended Complaint to support his position. He referred only to general principles of notice pleading. However, Plaintiffs' detailed First Amended Complaint specifies their theory of damages and, as noted by Judge Lagueux, Plaintiffs affirmatively represented in their prior Memorandum of Law that

they "are not pressing the part of the claim that involves the bankrupt stores." (Document No. 48 at 11).

On April 24, 2008, (the day after the hearing on this Motion), Plaintiffs moved for leave to file a Second Amended Complaint. (Document No. 74). The Proposed Second Amended Complaint does not seek to add any new counts or parties to the case. Plaintiffs do, however, seek to expand their theory of damages to allege that Defendants' wrongful actions resulted in the bankruptcy filings, as well as the termination of the SDAs, and that Plaintiffs lost the "pre-bankruptcy value of the Barkan Enterprise" (consisting of the SDAs, the bankrupt stores and the investment in corporate infrastructure) and not just the value of the SDAs as originally alleged.

It is apparent to me that Plaintiffs are trying to put the cart before the horse. In responding to the instant Motion for a Protective Order, Plaintiffs based their argument on the "Barkan Enterprise" theory of damages now proposed in their Second Amended Complaint and not the "SDA" theory actually included in their First Amended Complaint. Further, the "Barkan Enterprise" theory appears to contradict Plaintiffs' November 10, 2006 assertion that they have asserted no claim "for damages as a result of the termination of the franchise agreements." (Document No. 41 at 1, n.1). Plaintiffs contend that the documents sought in their subpoenas are relevant to both liability and damages. However, they do not specify in their Opposition (Document No. 68) which of the numerous document requests relate to liability issues and which relate to damages, and as to damages which relate to the proposed "Barkan Enterprise" theory and which relate to the original "SDA" theory. Thus, this Court has no basis upon which to reasonably cull through the requests and determine which relate to claims already plead and which relate to proposed claims. Since it is clear from Plaintiffs' Opposition that the requests are based, at least in part, on the proposed "Barkan

Enterprise" theory, the subpoenas are necessarily overly broad, as Plaintiffs moved late last week for leave to amend to formally plead the "Barkan Enterprise" theory. Accordingly, Defendants' Motion for a Protective Order is GRANTED, and the document subpoenas in dispute are quashed. SO ORDERED.

  /s/ Lincoln D. Almond
LINCOLN D. ALMOND
United States Magistrate Judge
April 28, 2008